**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARTIN BIBBS,

        Plaintiff,

    v.

MICHAEL SAYRE and LAURIE THOMAS,

        Defendants.

_____/

No. C 12-5917 CW (PR)

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; GRANTING
PLAINTIFF'S MOTION TO
FILE SUR-REPLY; REFERRING
CASE TO MAGISTRATE JUDGE
FOR SETTLEMENT
PROCEEDINGS; STAYING CASE

(Docket nos. 37, 57)

    Plaintiff, a state prisoner incarcerated at Pelican Bay State Prison (PBSP), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs and retaliation by medical staff at PBSP.  Plaintiff seeks money damages and injunctive relief against Defendants. Defendants filed a motion for summary judgment, Plaintiff filed an opposition, and Defendants filed a reply.  Plaintiff also moves for permission to file a sur-reply, which Defendants have opposed. For the reasons discussed below, Defendants' motion for summary judgment is DENIED, and Plaintiff's motion to file a sur-reply is GRANTED.

BACKGROUND

    The following facts are from Plaintiff's verified complaint and opposition and the parties' declarations and exhibits.

    Plaintiff suffers from severe pain in his right arm and

**United States District Court**
For the Northern District of California

shoulder because of a gunshot wound he sustained on December 24, 1992 while he was incarcerated.  Comp. at 7.  Plaintiff has remained on pain management care for his right arm since 1992.  Pl.'s Decl. at ¶ 8.  Plaintiff also suffers from high blood pressure.  Sayre Decl. at ¶ 8.

In early 2009, when Plaintiff first arrived at PBSP, Defendant Dr. Michael Sayre prescribed for Plaintiff's pain Neurontin, 600 mg. three times a day.[1]  Pl.'s Ex. 9, Feb. 3, 2009 medical note.  During Plaintiff's incarceration at PBSP, he has been on a pain treatment regimen, which included acetamine with codeine (Tylenol #3) and Naproxen.[2]  Pl.'s Ex. 7 (Pl.'s medical records) at 7, 10, 14, 17, 20, 23, 26, 29, 30, 38 and 41.  For several years, Dr. Williams[3] and Dr. Nnenna Ikegbu prescribed for Plaintiff's pain Tylenol #3, two tablets, twice per day as needed, for ninety days at a time.  Id.  On June 2, 2011, the PBSP Chronic Pain Committee reviewed Plaintiff's case and noted his complaints of chronic pain, post-surgical repair of a gunshot wound to the right upper extremity and his "somewhat limited range of motion in his right elbow."  Pl.'s Ex. 11.  The Committee recommended the continuation of Plaintiff's pain management plan, which consisted

---

[1] Neurontin, also called Gabapentin, is prescribed for, among other things, the alleviation of nerve pain. www.webmd.com/drugs/mono-8217-Gabapentin (last visited Jul. 29, 2014).

[2] Naproxen is prescribed to alleviate pain from various causes.  It is a nonsteroidal anti-inflammatory drug (NSAID) which works by reducing inflammation.  www.webmd.com/drugs/mono-1289-NAPROXEN (last visited Jul. 28, 2014).

[3] The parties do not provide Dr. Williams's first name.

**United States District Court**
For the Northern District of California

of Tylenol #3, two tablets twice per day.  Pl.'s Ex. 7 at 19-20
(June 2011 medication orders); Pl.'s Ex. 11.  Dr. Sayre and
Defendant Physician's Assistant (PA) Laurie Thomas were on the
Committee.  Pl.'s Ex. 11.

In July 2012, Dr. Nnenna Ikegbu again prescribed Tylenol No.
3, two tablets per day, twice a day as needed, from July 23, 2012
through October 21, 2012.  Pl.'s Ex. 7 at 6; Soderlund Decl., Ex.
1 (Pl.'s medical records)(under seal) at 17.  Dr. Ikegbu also
prescribed Naproxen, 500 mg, twice a day as needed, from July 3,
2012 through October 1, 2012.  Pl.'s Ex. 7 at 6, Soderlund Decl.,
Ex. 1 at 17.

In October 2012, Dr. Ikegbu renewed Plaintiff's Tylenol #3
prescription through October 16, 2012.  Pl.'s Ex. 7 at 1.  It
appears that, on October 1, 2012, Dr. Ikegbu renewed Plaintiff's
Naproxen prescription for sixty days.  Pl.'s Ex. 63.  On October
16, 2012, PA Thomas renewed Plaintiff's Tylenol #3 prescription
for thirty days, two tablets twice a day as needed, with a limit
of sixty tablets.  Pl.'s Ex. 7 at 2.  She also entered a note in
Plaintiff's medical record, as follows: "Tylenol #3 changed to 2
tabs po [by mouth] bid [twice a day] prn [as needed] NTE [not to
exceed] 60 tabs/month x 30 days."  Soderlund Decl., Ex. 1 at 44.
This meant Plaintiff could receive two tablets per day as needed
instead of two tablets twice a day as needed, as Dr. Ikegbu had
prescribed.  Plaintiff states that PA Thomas changed his Tylenol
#3 prescription without examining him or notifying him that she
was doing so.  Pl.'s Decl. at ¶ 10.  PA Thomas does not dispute
this.  As a physician's assistant, PA Thomas has limited authority
to prescribe medication for inmates; she cannot prescribe

3

**United States District Court**
For the Northern District of California

medication above what was prescribed by a supervising physician, but can continue or reduce a patient's drug plan.  Thomas Decl. at ¶ 13.

On October 30, 2012, Dr. Sayre, who was then the PBSP Chief Medical Officer and not Plaintiff's primary care physician, met with Plaintiff.  Sayre Dec. at ¶ 8.  Dr. Sayre states that he examined Plaintiff in person.  Id.  Plaintiff states that Dr. Sayre did not examine him during this meeting and only looked at him from his chair.  Pl.'s Decl. at ¶ 13.  In his declaration, Dr. Sayre states the following based on his meeting with Plaintiff:

> In my medical opinion, there were no clinical indications for pain medication.  Mr. Bibbs's gunshot wound was approximately twenty-years old.  There was no nerve or anatomical damage that indicated that pain medication would benefit Mr. Bibbs.  In addition, I noted that Mr. Bibbs had prior drug-seeking behavior. Also, Naproxen can cause elevated blood pressure, another medical problem that Mr. Bibbs faced. Therefore, I ordered the discontinuance of Mr. Bibbs's Tylenol No. 3 prescription, and I did not renew Mr. Bibbs's Naproxen prescription.

Sayre Decl. at ¶ 8.

In his medical note, Dr. Sayre states that Plaintiff expressed understanding that Dr. Sayre was discontinuing Plaintiff's pain medication and agreed with this plan.  Pl.'s Ex. 16.  Plaintiff states that he did not agree with Dr. Sayre's plan to discontinue his pain medication.  Pl.'s Dec. at ¶ 14. Plaintiff also states that Dr. Sayre told Plaintiff he was discontinuing Plaintiff's pain medication because of Plaintiff's history of filing complaints and litigation against PBSP staff.

Pl.'s Decl. at ¶ 12.[4]  This meeting was the only instance when Dr. Sayre acted as Plaintiff's primary-care physician.  Soderlund Decl., Ex. 1 at 89; Sayre Decl. at ¶ 10.

On November 6, 2012, Plaintiff mailed a confidential letter to the PBSP Chief Medical Executive, Dr. Donna Jacobsen, stating that Dr. Sayre had retaliated against him by discontinuing his pain medication.  Opp. at ¶ 30.  In a November 7, 2012 letter to Plaintiff, Dr. Sayre stated that Dr. Jacobsen was not available to respond to Plaintiff's November 6, 2012 letter, and that Dr. Sayre had discontinued Plaintiff's medication based on his diagnosis of Plaintiff's condition and not from retaliation.  Pl.'s Ex. 39.

On November 8, 2012, PA Thomas changed Plaintiff's blood pressure medication without examining him or treating him for pain and advised Nurse Mary Sullivan to file a mental health referral for Plaintiff.  Opp. at ¶ 34, Pl.'s Ex. 22.

On November 15, 2012, the PBSP Pain Management Committee convened to review Plaintiff's pain treatment plan.  Soderlund Decl. Ex. 1 at 86; Pl.'s Ex. 24.  This committee consists of all doctors and physician's assistants at PBSP.  Sayre Decl. at ¶ 9. As indicated in the committee note, Dr. Sayre presented Plaintiff's case as follows:

> Gunshot wound to R elbow 20 yrs ago with corrective surgery.  He complains of burning pain in entire R arm and is requesting gabapentin be resumed.  He was also on amitriptyline for a period of time.  The upper extremities are symmetric without atrophy, equal in

---

[4] Plaintiff also states that PBSP medical and custodial staff warned him that Dr. Sayre would retaliate against him because of his history of litigating against medical staff.  Pl.'s Decl. at ¶ 20.  This is inadmissible hearsay, which cannot be considered. See Fed. R. Evid. 801.

United States District Court

For the Northern District of California

> temperature, good pulses.  Has point tenderness on elbow.  It is noted that his complaints are quite variable from visit to visit.

Pl.'s Ex. 24.

The committee recommended: (1) discontinuation of Tylenol #3 and Naproxen; (2) no regular follow up required; and (3) acetaminophen to be used only for exacerbations.  Id.

On November 19, 2012, PA Thomas examined Plaintiff for right arm and shoulder pain and his refusal to take blood-pressure medication.  Soderlund Decl., Ex. 1 at 79-82; Thomas Decl. at ¶ 12.  PA Thomas read the Pain Management Committee recommendations, examined Plaintiff and did not find clinical evidence supporting Plaintiff's expressions of pain.  Soderlund Decl., Ex. 1 at 79; Thomas Decl. at ¶ 12.  PA Thomas did not believe that regular Tylenol was indicated.  Id.

On November 20, 2012, Plaintiff filed a request for medical care for severe pain.  Opp. at ¶ 39; Pl.'s Ex. 26.  The request was referred to PA Thomas, who purposefully ignored it.  Opp. at ¶ 39.  On November 26, 2012, Plaintiff requested medical treatment, but PA Thomas did not place Plaintiff on the list for medical care.  Opp. at ¶ 40; Pl.'s Ex. 27.

On November 27, 2012, Plaintiff saw Nurse Sullivan who indicated in her treatment note that PA Thomas ordered Plaintiff not be placed on the list for a follow-up visit.  Soderlund Decl., Ex. 1 at 75-76.  PA Thomas states that she did not believe Plaintiff needed pain treatment, but told Nurse Sullivan to order blood and stool tests to ensure Plaintiff's medication was not causing internal bleeding or other complications.  Thomas Decl. at ¶ 15; Soderlund Decl., Ex. 1 at 75-76.  Plaintiff states PA Thomas

United States District Court

For the Northern District of California

1   determined he was not in pain without examining him.  Opp. at

2   ¶ 40.

3        On December 17, 2012, Plaintiff submitted a request for

4   medical care and pain medication, but no treatment or examination

5   was provided.  Opp. at ¶ 41; Pl.'s Ex. 28.

6        On December 18, 2012, Nurse Sullivan examined Plaintiff for

7   right arm and shoulder pain, and placed him on a "routine"

8   treatment plan, requiring that he be re-examined within fourteen

9   days.  Id.  Plaintiff did not see PA Thomas until January 16,

10  2013, twenty-nine days later.  Opp., Pl.'s Ex. 29.

11       On January 16, 2013, PA Thomas examined Plaintiff for right

12  arm and shoulder pain.  Thomas Decl. at ¶ 16.  She ordered x-rays

13  of Plaintiff's right arm and shoulder as Plaintiff requested.  Id.

14  PA Thomas did not prescribe Tylenol because, in her medical

15  opinion, it was unnecessary.  Thomas Decl. at ¶ 16; Soderlund

16  Decl., Ex. 1 at 71-74, and 97-98.

17       On February 6, 2013, Dr. Venes examined Plaintiff for chronic

18  asthma and high blood pressure.  Opp. at ¶ 48, Ex. 32.  Dr. Venes

19  prescribed Tylenol as needed for Plaintiff's arm pain.  Id.

20  Plaintiff states he did not receive the Tylenol prescribed by Dr.

21  Venes.  Opp. at ¶ 50.

22       On February 25, 2013, Plaintiff again reported right arm and

23  shoulder pain to PA Thomas.  Opp. at ¶ 53.  PA Thomas found the

24  beginnings of osteoarthritis in Plaintiff's right elbow and

25  determined that daily use of medication was unnecessary, but a

26  short course of regular Tylenol might provide Plaintiff a mild

27  benefit for his arthritis.  Pl.'s Ex. 36; Thomas Decl. at ¶ 17.

28  She prescribed regular Tylenol for fourteen days.  Thomas Decl. at

7

¶ 17; Soderlund Decl., Ex. 1 at 63-64 and 67-68.

On March 28, 2013, Dr. Ikegbu saw Plaintiff for his right arm and shoulder pain.  Pl.'s Ex. 35; Soderlund Decl., Ex. 1 at 35. Dr. Ikegbu discussed various treatment options with Plaintiff, prescribed regular Tylenol and referred Plaintiff's treatment plan to the Pain Management Committee.  Id.  On April 18, 2013, the Pain Management Committee reviewed Plaintiff's case but only prescribed regular Tylenol for pain.  Pl.'s Ex. 37.  On May 31, 2013, Dr. Ikegbu prescribed Naproxen for Plaintiff's pain. Soderlund Decl., Ex. 1 at 33.  Plaintiff also received a Kenalog shot to relieve pain.[5]  Id. at 48.  Plaintiff stated, in a written request for medical care, that this pain management regimen was not managing his pain, and requested Tylenol No. 3 or Neurontin, which had relieved his pain in the past.  Id. 48-49.

DISCUSSION

I.  Motion for Summary Judgment

A. Legal Standard

Summary judgment is only proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

---

[5] A Kenalog shot is a corticosteroid hormone injected into a muscle or joint to treat arthritis by reducing swelling. http://www.webmd.com/drugs/drug-9275-Kenalog+injection.aspx?drugid=9275&drugname=Kenalog+injection&source=1.

United States District Court
For the Northern District of California

dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324.

In considering a motion for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party.  Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  Fed. R. Civ. P. 56(c); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets

**United States District Court**
For the Northern District of California

forth specific facts admissible in evidence.  <u>Schroeder v.</u>
<u>McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

   B. Deliberate Indifference to Serious Medical Needs

   Plaintiff argues Defendants have shown deliberate
indifference to his serious medical need for treatment of severe
pain by ignoring his requests for pain medication, withholding
prescribed medication, failing to examine him adequately, changing
his pain medication without notifying him, entering false
information into his medical record and destroying parts of his
medical record.

      1. Deliberate Indifference Legal Standard

   Deliberate indifference to serious medical needs violates the
Eighth Amendment's proscription against cruel and unusual
punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin</u>
<u>v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other</u>
<u>grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136
(9th Cir. 1997) (en banc).  A determination of "deliberate
indifference" involves an examination of two elements: the
seriousness of the prisoner's medical need and the nature of the
defendant's response to that need.  <u>McGuckin</u>, 974 F.2d at 1059.

   A serious medical need exists if the failure to treat a
prisoner's condition could result in further significant injury or
the unnecessary and wanton infliction of pain.  <u>Id.</u>  The existence
of an injury that a reasonable doctor or patient would find
important and worthy of comment or treatment, the presence of a
medical condition that significantly affects an individual's daily
activities, or the existence of chronic and substantial pain are

United States District Court

For the Northern District of California

examples of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60.

A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. McGuckin, 974 F.2d at 1060.

Deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown in the way in which they provide medical care. Id. at 1062. Neither a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment, nor a difference of medical opinion as to the need to pursue one course of treatment over another is sufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1059-61 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and they chose this course in conscious disregard of an excessive risk to the plaintiff's health. Id. at 1058.

**United States District Court**
For the Northern District of California

1

2

    2. Analysis

       a. Serious Medical Need

3     Plaintiff maintains the continuing pain in his right arm and

4  shoulder is a serious medical need.  Defendants appear to argue

5  that Plaintiff's pain is not a serious medical need because in

6  their opinion Plaintiff has no physical or neurological evidence

7  of pain and, on this basis, they discontinued his pain medication.

8  However, except for the period between October 30, 2012 and May

9  2013, Plaintiff was continually being treated for pain as a result

10  of his 1992 gunshot wound.  Applying <u>McGuckin</u>, this evidence

11  supports a finding that Plaintiff has a serious medical need.  <u>See</u>

12  <u>McGuckin</u>, 974 F.2d at 1060 (chronic and substantial pain an

13  indication of serious need for medical treatment).

14       b. Defendant Sayre

15     In support of his motion for summary judgment, Dr. Sayre

16  states that, based on his medical evaluation, he determined

17  Tylenol No. 3 and Naproxen were not appropriate for Plaintiff's

18  pain.  Dr. Sayre based his opinion on his findings that:

19  (1) Plaintiff's gunshot wound was approximately twenty years-old

20  and his reports of pain were inconsistent with an injury of that

21  age; (2) no evidence of nerve or anatomical damage supported a

22  finding that pain medication would benefit Plaintiff;

23  (3) Plaintiff had a history of narcotics use; and (4) Naproxen can

24  cause elevated blood pressure, which could exacerbate Plaintiff's

25  high blood pressure.  Sayre Decl. ¶ 8.

26     Plaintiff presents evidence that, since he sustained a

27  gunshot wound in prison in 1992, he has been on a pain management

28  regimen for the pain in his right arm and shoulder.  At PBSP, from

the time he arrived in 2009, he was prescribed pain medication, including Tylenol #3 and Naproxen.  However, on October 30, 2012, Dr. Sayre, who was not Plaintiff's primary care physician, decided to meet with Plaintiff and, without physically examining Plaintiff, discontinued all of Plaintiff's pain medication. Taking this evidence in the light most favorable to Plaintiff, as must be done on a motion for summary judgment, it appears that, on October 30, 2012, Dr. Sayre, without any new medical evidence, decided that Plaintiff's twenty years of pain management should end.

Dr. Sayre's sudden decision to end Plaintiff's pain medication without providing an alternative pain management regimen raises a serious dispute of material fact regarding whether Dr. Sayre was deliberately indifferent under McGuckin. See McGuckin, 974 F.2d at 1062 (deliberate indifference shown when prison officials deny, delay or interfere with prisoner's medical treatment).  Here, the evidence shows that that Dr. Sayre totally denied Plaintiff medical treatment for his pain.

Dr. Sayre argues that he discontinued Plaintiff's pain medication because, when he examined Plaintiff on October 30, 2012, he found no clinical indication that Plaintiff should receive pain medication for a twenty-year old wound.  However, Plaintiff's evidence that Dr. Sayre did not examine him on October 30, 2012, must be taken as true.  Thus, it appears that Dr. Sayre discontinued Plaintiff's pain medication without physically examining him or making any new physical findings that would warrant such a decision.  Furthermore, Dr. Sayre does not explain why, on October 30, 2012, he decided to meet with Plaintiff.  As

13

United States District Court
For the Northern District of California

he states himself, as Chief Medical Officer, he allows each
patient's primary care physician to determine his or her patient's
treatment plan.  See Sayre Dec. at ¶ 10 ("Because I have not acted
as Mr. Bibbs's primary care physician or examined him since
October 30, 2012, it would be medically inappropriate for me to
order any other medical treatment for him.").

Dr. Sayre argues that Plaintiff's request for Tylenol #3 is a
mere difference of opinion between a patient and his doctor, which
is insufficient to establish deliberate indifference.  Dr. Sayre
implies that Plaintiff is requesting Tylenol #3 because it
contains codeine, not because he is in pain.  However, as
Plaintiff points out, he requested Neurontin as well as Tylenol
#3.  Dr. Sayre had prescribed Neurontin for Plaintiff when he
first arrived at PBSP in 2009 and, apparently, it helped alleviate
Plaintiff's pain.  In any event, the evidence shows that Dr. Sayre
did not offer Plaintiff a different treatment plan; he offered no
treatment plan.  Thus, these facts do not constitute a mere
difference of opinion regarding treatment plans.

Dr. Sayre also argues that his discontinuance of Plaintiff's
pain medication was not deliberately indifferent because the
entire Pain Management Committee, consisting of all PBSP
physicians and physician's assistants, approved of his treatment
plan.  However, Dr. Sayre himself presented Plaintiff's case to
the Committee, represented that Plaintiff's pain was under
control, and implied that Plaintiff was malingering.

Dr. Sayre also argues that he was not deliberately
indifferent to Plaintiff's pain because his decision was based on
the facts that Plaintiff had previously exhibited drug-seeking

**United States District Court**
For the Northern District of California

behavior and that codeine is an addictive drug.  However, Dr.
Sayre fails to point to anything in Plaintiff's medical record
that documents this concern.  Dr. Sayre also noted that Naproxen
could elevate Plaintiff's blood pressure.  Dr. Sayre did not offer
an alternative treatment plan that would eliminate these negative
side effects.  Furthermore, Dr. Sayre fails to explain why, months
later, Dr. Ikegbu again prescribed Naproxen for Plaintiff's pain.

     For all these reasons, Plaintiff's evidence has raised a
genuine issue of fact regarding whether Dr. Sayre was deliberately
indifferent to Plaintiff's serious medical needs.  Dr. Sayre's
motion for summary judgment on this claim is denied.

                         c. PA Thomas

     PA Thomas states that she did not ignore Plaintiff's
complaint of pain but took reasonable steps to treat it.  In her
declaration, PA Thomas states that, in October 2012, she did not
alter or discontinue Plaintiff's Naproxen prescription and did not
deny him Tylenol #3.  However, PA Thomas does not explain why, in
October 2012, she decided to reduce Plaintiff's dosage of Tylenol
#3 when, for many months, Dr. Ikegbu had prescribed a higher
dosage.

     PA Thomas states that, after Dr. Sayre discontinued
Plaintiff's pain medication and the Pain Management Committee
approved this treatment plan, she examined Plaintiff, looked for
clinical indications that could support his pain claims and found
none.  Therefore, even though Plaintiff informed her every time
she examined him of the severe pain he was experiencing, she
denied him any pain medication, even regular Tylenol, which the
Committee had approved to alleviate pain exacerbations.

**United States District Court**
For the Northern District of California

      In support of her decision to deny Plaintiff regular Tylenol,
PA Thomas relies on the findings of the Committee that:
(1) Plaintiff's gunshot wound was approximately twenty years old
and his reports of pain were inconsistent with an injury of that
age; (2) Plaintiff's reports of pain varied considerably between
each visit; and (3) Plaintiff had been given corrective surgery
for the gunshot wound.  Thomas Decl. ¶ 11.

      However, the Committee approved regular Tylenol to alleviate
Plaintiff's pain exacerbations.  Although Plaintiff consistently
informed PA Thomas of the pain he was experiencing, she determined
his complaints were false, and did not prescribe regular Tylenol.
On a motion for summary judgment, Plaintiff's evidence that he was
experiencing severe pain must be taken as true.  Thus, like Dr.
Sayre, PA Thomas denied Plaintiff treatment for his pain.
Plaintiff's evidence raises a genuine issue of material fact
whether PA Thomas's failure to prescribe regular Tylenol when
presented with Plaintiff's persistent pain complaints amounts to
deliberate indifference to Plaintiff's serious need for pain
relief.

      PA Thomas argues that she was not deliberately indifferent
because, as a physician's assistant, she can only prescribe drugs
that continue a drug regimen prescribed by a supervising
physician, but she cannot prescribe more medication than the
supervising physician has prescribed.  Therefore, when Plaintiff
complained of pain, it was only possible for her to prescribe
regular Tylenol, which had been approved by the Pain Management
Committee for exacerbations.  Although this statement is true, it

1  does not excuse PA Thomas for not prescribing regular Tylenol when

2  presented with Plaintiff's complaint of severe pain.

3       PA Thomas also argues that she provided adequate treatment

4  for Plaintiff because she ordered blood and stool tests to ensure

5  that his medication was not causing internal bleeding and, later,

6  she ordered x-rays of his right arm and shoulder as Plaintiff

7  requested.  However, both times she failed to prescribe regular

8  Tylenol for his pain, which is at issue here.  Moreover, as

9  documented by Plaintiff's evidence, he requested to see PA Thomas

10 many times for his pain, but she refused because she thought his

11 pain complaints were not valid.

12      PA Thomas's argument that Plaintiff's claim is merely a

13 difference of opinion about medical treatment is not persuasive.

14 PA Thomas's failure to provide even regular Tylenol to Plaintiff

15 amounts to a complete denial of medical treatment for his pain.

16 This situation is not one of a mere difference of opinion.

17      Taken in the light most favorable to Plaintiff, the evidence

18 raises a genuine issue of material fact regarding whether PA

19 Thomas's actions amounted to deliberate indifference to

20 Plaintiff's serious medical needs.  PA Thomas's motion for summary

21 judgment on this issue is denied.

22              d. Claim for Prospective Injunctive Relief

23      Plaintiff seeks injunctive relief in the form of adequate

24 medical care and a referral to a neurologist and pain management

25 specialist.  Dr. Sayre, as the Chief Medical Officer of PBSP,

26 could provide the injunctive relief Plaintiff seeks.  However, PA

27 Thomas, as a physician's assistant, cannot provide such relief.

28 Therefore, with respect to Plaintiff's claim for injunctive

relief, Dr. Sayre's motion for summary judgment is denied and PA Thomas's motion is granted.

C. Retaliation

Plaintiff claims that Dr. Sayre discontinued his pain medication in retaliation for Plaintiff's filing complaints and lawsuits against PBSP staff.

1. Legal Standard for Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Prisoners may not be retaliated against for exercising their right of access to the courts. Schroeder, 55 F.3d at 461; Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)(retaliation for prisoner's work as jailhouse lawyer).  This constitutional prohibition includes retaliation for filing a complaint. Sorrano's Gasco v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The right of access to the courts extends to established prison grievance procedures. Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  Thus, a prisoner may not be retaliated against for using such procedures. Rhodes, 408 F.3d at 567; Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

United States District Court
For the Northern District of California

To state a First Amendment retaliation claim, a prisoner may show that he suffered constitutional harm, since constitutional harm that is more than minimal will almost always have a chilling effect. Rhodes, 408 F.3d at 567-68 n.11; see Gomez v. Vernon, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to quit his law library job in the face of repeated threats by defendants to transfer him because of his complaints about the administration of the library).  A prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim.  Rhodes, 408 F.3d at 568-69.  That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough.  Id. at 569 (destruction of inmate's property and assaults on the inmate enough to chill inmate's First Amendment rights and to state a retaliation claim, even if inmate filed further grievances and a lawsuit).

Retaliatory motive may be shown by the timing of the allegedly retaliatory act and an inconsistency with previous actions, as well as direct evidence.  Bruce, 351 F.3d at 1288-89.

The prisoner bears the burden of pleading and proving an absence of legitimate correctional goals for the conduct of which he complains.  Pratt, 65 F.3d at 806.  If the prisoner satisfies this burden, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose.  Schroeder, 55 F.3d at 461-62.

2.  Analysis

Plaintiff declares that, during his October 30, 2012 meeting with Dr. Sayre, Dr. Sayre told him that he was discontinuing Plaintiff's pain medication because Plaintiff had a history of filing complaints against PBSP staff.  Dr. Sayre denies that he made this statement or that he retaliated against Plaintiff for filing grievances and complaints.  However, on a motion for summary judgment, disputes of fact must be resolved in Plaintiff's favor.  Viewed in favor of Plaintiff, the evidence supports a claim of retaliation.

Dr. Sayre argues that the retaliation claim fails because his actions reasonably advanced a legitimate correctional goal of providing Plaintiff with an appropriate course of treatment for his pain.  However, as discussed in connection with the deliberate indifference claim, there is a genuine dispute of material fact whether Dr. Sayre provided Plaintiff with constitutionally acceptable medical treatment for his pain.  This precludes the argument that Dr. Sayre's medical treatment advanced a legitimate correctional goal.

Dr. Sayre also argues that the retaliation claim fails because Plaintiff does not provide evidence that Dr. Sayre's actions chilled Plaintiff's First Amendment rights.  Plaintiff has continued to pursue civil rights litigation against Dr. Sayre and other PBSP medical personnel regarding the quality of his medical care.  See e.g., Bibbs v. Sayre, C 13-01570 CW (PR).  However, Plaintiff need not demonstrate that his First Amendment rights were actually inhibited or suppressed, only that there has been a chilling effect.  See Rhodes, 408 F.3d at 568-69.

United States District Court

For the Northern District of California

1    The evidence, viewed in the light most favorable to

2  Plaintiff, raises triable issues of material fact with respect to

3  whether Dr. Sayre retaliated against Plaintiff for filing

4  grievances and complaints against PBSP medical staff.  Dr. Sayre's

5  motion for summary judgment is DENIED on this claim.

6  III. Qualified Immunity

7    Defendants argue they are entitled to qualified immunity.

8  The defense of qualified immunity protects "government officials

9  . . . from liability for civil damages insofar as their conduct

10 does not violate clearly established statutory or constitutional

11 rights of which a reasonable person would have known." Harlow v.

12 Fitzgerald, 457 U.S. 800, 818 (1982).  A court considering a claim

13 of qualified immunity must determine whether the plaintiff has

14 alleged the deprivation of an actual constitutional right and

15 whether the right was clearly established, such that it would be

16 clear to a reasonable officer that his conduct was unlawful in the

17 situation he confronted.  Pearson v. Callahan, 555 U.S. 223, 236

18 (2009).

19    Viewing the evidence in the light most favorable to

20 Plaintiff, Defendants are not entitled to qualified immunity.  As

21 discussed above, disputed issues of material fact preclude summary

22 judgment for Defendants on the constitutional claim of deliberate

23 indifference to Plaintiff's serious medical needs and for Dr.

24 Sayre on the retaliation claim.  Furthermore, viewing the evidence

25 in Plaintiff's favor, it would have been clear to a reasonable

26 medical professional in Dr. Sayre's position that it was unlawful

27 to discontinue Plaintiff's pain medication, when Plaintiff

28 complained of chronic pain and had been on a pain management

21

**United States District Court**
For the Northern District of California

1  regimen for twenty years.  Viewing the evidence in Plaintiff's

2  favor, it would have been clear to a reasonable medical

3  professional in PA Thomas's position that it was unlawful to deny

4  Plaintiff regular Tylenol in light of his continued complaints of

5  persistent pain.  Furthermore, the law against retaliating against

6  a prisoner for exercising his First Amendment rights was clearly

7  established such that it would have been clear to a reasonable

8  professional in Dr. Sayre's position that discontinuing

9  Plaintiff's medication in retaliation for his litigation was

10  unlawful.

11      Accordingly, Defendants are not entitled to qualified

12  immunity; their motion for summary judgment based on qualified

13  immunity is DENIED.

14  IV. Plaintiff's Motion to File Sur-Reply

15      Plaintiff moves for permission to file a sur-reply.  Good

16  cause appearing, the motion (docket no. 57) is GRANTED.

17                          CONCLUSION

18      For the foregoing reasons, the Court orders as follows:

19      1. Plaintiff's motion to file a sur-reply is GRANTED.  Docket

20  no. 57.

21      2. Defendant Thomas's motion for summary judgment with

22  respect to the claim for injunctive relief is GRANTED.

23  Defendants' motion for summary judgment with respect to all other

24  claims is DENIED.  Docket no. 37.

25      3. The Northern District of California has established a Pro

26  Se Prisoner Settlement Program.  Certain prisoner civil rights

27  cases may be referred to a Magistrate Judge for a settlement

28

conference.  The Court finds that a referral is in order now that Plaintiff's claims have survived summary judgment.  Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference.

The conference shall take place within one-hundred-twenty days of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten days after the conclusion of the conference, file with the Court a report of the result of the conference.

The Clerk shall provide a copy of this Order to Magistrate Judge Vadas.

4. This case is stayed until the conclusion of settlement proceedings.

5. This order terminates Docket nos. 37 and 57.

IT IS SO ORDERED.

Dated:   8/18/2014

CLAUDIA WILKEN
United States District Judge

cc: NJV